Case No. 15-1050 et al. Rush University Medical Center Petitioner v. National Labor Relations Board Mr. Sparks for the Petitioner, Ms. Heaney for the Respondent, and Mr. Kompas for the Intervener Good morning. Good morning, Judge. Ken Sparks for Rush University Medical Center. May it please the Court. Judges, for more than 37 years, Congress and the National Labor Relations Board considered the potential for disruption in acute health care to be a paramount concern, warranting careful consideration and special rules during elections to avoid disruptions from both the election process, from strikes, from bargaining, and from wage whipsawing. In 2011, the NLRB abruptly reversed course in its decision issued in St. Vincent, and it's that decision that leads us here today. That decision has not yet been reviewed in a Court of Appeals. So if St. John's had never happened and all we had was St. Vincent's, where are you then? Judge, I think we're still in the same place we are now. Ultimately, the question is, did St. Vincent address the concerns that Rush has raised here and the concerns that historically run through the NLRB's jurisprudence from 1974? So you think, for you then, it's more than St. Vincent's doesn't explain its departure from St. John's, according to you. It's that St. Vincent's itself is wrong. It is both that St. Vincent itself is wrong, that St. Vincent doesn't explain why it departs from the historical concerns about strikes, about wage whipsawing, about multiplying the bargaining process, and the fact that it departed from its prior decision in St. John's. So the Board, if it's going to depart from its own precedent, it must explain that. But equally and separately apart from that, if it's going to issue that initial decision to decide that these concerns are not of significance to the NLRB, it must explain what it did. And if you read both St. Vincent's, if you read the decisions in this case, they nowhere address those concerns that run through the rulemaking that occurred in 1989, they nowhere explain the concerns that run through the jurisprudence prior to 1989, and they nowhere explain the concerns that run through the later cases. They at least said that the health rule has to do with additional units, and this procedure that we're talking about in this case then at St. Vincent didn't add any units. It added individuals to an existing unit. There are two parts to that question. Certainly you are correct that they tried to address the meaning of the rule itself. No question about that about St. Vincent. The question is, is that explanation adequate? Secondarily, does that still address the concerns that we have arising in the case about the underlying concerns about what flows from the multiplication of elections? And that's nowhere addressed in St. Vincent. Starting with the rule itself, if you look at the rule, the rule talks about the fact that if additional units exist, then we have a situation where the rule applies. But if you look at this case, if you look at page 19 of the appendix, there is a new certification issue. We are not simply looking at the existing unit and leaving it as it is, as it was the case in Kaiser and in Crittenden, but we have a new bargain unit that now adds additional employees to it. But the language of the rule is additional unit. It's certainly not multiplying the number of units. It is adding additional employees to it. Right. That's a highly significant difference, isn't it? You certainly could argue that it is. That's certainly what the board decided. That's the weakest link in your argument, wouldn't you agree? Certainly. So tell us why that link shouldn't be dispositive against you. The question is, when you look at the original decision in St. John's, which reached the opposite result, whether or not that link was broken and adequately explained in St. Vincent, we don't believe it is. But setting aside that issue, you still have the underlying policy issue. It seems to me you've just said that the real issue before you now is the relationship between St. John's and St. Vincent's and whether there was an adequate explanation. Correct. But I think you've just recognized that the attack on St. Vincent's alone, as if there had been no St. John's, is the weaker of your two arguments. The first of our two arguments, we would look at the other arguments certainly very strong. If you look at St. Vincent itself, it never addresses the underlying policy concerns. In the 1989 rulemaking, the board talked about that it is not simply proliferation of units, which is what the board wants to say that this is about, that is at issue. But if you look at 284 NLRB 1575, the board said it is the, quote, problems perceived to arise from proliferation that are at issue in this case. And the board said that in 1989 because it was concerned about underlying work stoppages, wage whipsawing, and other evils that flow from additional elections and that flow from additional parties. It's not just adding units. It's not just adding units. But the real problem here is elections that would get in the way of patient care, as I understand it. Is that right? That's correct. Because it's not, well, it's both the elections and what occurs afterwards. Yeah. The election process itself is a very big process. But you've got this problem with the language of the rule talking about additional units, I think. If you look at the evils that flow from this, at the problems that the board has been concerned about, both before and after the rules were issued in 1989, they were concerned about things other than just multiplication of the units. They talked about the rough housing of the election process itself, that this consumes time from supervisors, time from employees, time from existing bargaining unit members who are themselves campaigning with the employees who may be joining the unit. But even after that process is completed, these new – But just so that I'm clear, the existing bargaining unit employees do not vote on whether to accept these new members into their bargaining unit, right? It's certainly the case that they do not vote, but one assumes that voting occurs in isolation without campaigning, if one looks only at who votes. If you look at the process, you have business agents campaigning. You have other employees in the existing unit campaigning. You have employees who are subject to the vote campaign. You have the employer campaigning. You have employees not involved in the unit or the vote who may want to campaign and have a say about the issues. So you can have upset regardless of who is in the voting unit itself. Even then, you go through the election. The union prevails in the election. These employees are not automatically added to the existing collective bargaining agreement. They have the right, and the employer and the union have the right, to separately bargain over their terms and conditions of employment. If you have a series of micro-units that are created through the board's new rule, what you have is each separate small group of employees separately going through a bargaining process before the contract reopens. You have to negotiate all of their terms. Each of those negotiations is separate. Could you address the relationship between St. Vincent's and St. John's? Sure. If you look at St. Vincent and St. John's, St. John's is the original decision, of course, in which the board decided that they did believe that their rules and their policies did require a different result and was reached in St. Vincent. If you look at St. Vincent, ordinarily the board, if it wants to set aside one of its precedents, is supposed to have an on-bond decision before the board deciding it did not do so. The board tried instead to sidestep St. John's and decided that it was incorrectly, that it was dicta and not really the real decision before the board. That wasn't the decision previously in the Kaiser Foundation Hospital Case 335 NLRB 551. They reached a contrary result. If you look at some of the other decisions as well, they also decided that those were not the actual ruling in St. John's. Having three times decided that St. John's meant something else, they could not simply rush it aside and say that's not what St. John's decided. That's not a reasoned explanation. If they want to overrule it, they should overrule it. Well, they said that they looked at what was actually before the board in St. John's and that this particular issue wasn't before them, right? It's certainly what they said in St. Vincent's, yes. And you didn't say in your briefs that that's not true. The briefs actually did raise the issue or give us some other reason to kind of hang our hat on that, you know, this was an erroneous statement. If you look at St. John's itself, I think it speaks for itself as to what it said it decided, as to what it said it was adopting as a regional director's decision. If you look at the Kaiser Foundation case and some of the other cases, the board decided they did restate what St. John's said. So, again, from our perspective, the board several times said what they thought St. John's meant, and then they decided to reverse course in the St. Vincent case. The last argument is with respect to the nursing assistants themselves. We did ask as an alternative, if the first argument is not successful, that the court address whether or not nursing assistants should have been permitted to vote. The sole basis for the board's decision that they should not vote is that nursing assistants are students in the nursing program, in a nursing program, and that this alone is insufficient. If you look at the board's own decisions in University of West Los Angeles and Rhode Island Hospital, that is not a sufficient basis in and of itself to allow the exclusion of those from the voting population. The nursing assistants perform the exact same duties as the PCTs. They serve in the same schedules as the PCTs. They otherwise share a tremendous community of interest with them, and in those circumstances, they should be allowed to have voted along with them. In summary, I want to preserve a little bit of my time for rebuttal, but we would ask that the board's order be vacated and that the board's cross-petition for enforcement be denied. Thank you very much. Good morning. Good morning, Reiners. My name is Elizabeth Heaney, and I represent the National Labor Relations Board, which is seeking enforcement of its order today. And I'll start right off with what Judge Griffith pointed out, which is that this involves an Arbor Globe self-determination election, which by definition is not a petition seeking an additional unit. Instead, it carves out a segment of employees and has them join an existing unit. But let me read you the language from St. John's. As I read this to you, it's not long. It sure sounds to me like it's establishing a principle that ought to govern this case. Here's what the board said in St. John's. Because the petitioner already represents a nonconforming unit of skilled maintenance employees, if the petitioner seeks to represent any of the remaining unrepresented skilled maintenance employees, the petitioner must represent all the remaining skilled maintenance employees as part of its existing unit of plumbers and refrigeration employees. That seems to me to establish a principle that, as I understand it, was at the heart of what the health care rule is about. And that is to avoid the proliferation of elections and all the activities surrounding them because Congress had found over time that they disrupted patient care. We're talking about a very special and unique sector of the economy here that Congress has expressed a great deal of concern about organizing activities disrupting it. Now, that principle in St. John's sounds pretty clear to me, and I don't see anything in St. Vincent's that seeks to distinguish that principle. To be sure, St. Vincent's says we have different facts. Every case has different facts. But what's the principle? Where did St. Vincent's distinguish that principle? I don't see it. Your Honor, I'll help if I can. St. Vincent's is not St. John's, and St. John's is not the case that is currently before this court. St. Vincent's never resulted in unit proliferation. Because it was an Armor Globe election, those employees were joined into the existing unit. And in St. John's, the board was also faced with trying to prevent unit proliferation, which, as you noted, was one of the driving forces behind the health care rule. If you look at St. John's, you had five pre-existing, non-conforming units of skilled maintenance workers. I understand all that. What I'm looking for is where in St. Vincent's did the board make the argument you're making now. That seems to me to be a relevant question. If the board is going to change course, it's free to do so, but it has to give us a reasoned explanation for doing so. I just can't find in St. Vincent's the explanation other than we have different facts. I can't find in St. Vincent's an effort to explain why the principle that I read from St. John's shouldn't apply to St. Vincent's. Well, first, just to note that when in the board's rulemaking to the health care rule, in the second comment to the health care rule, the board stated that it would decide issues concerning non-conforming units on a case-by-case adjudicative basis, which is what it has been doing. And if the board in St. Vincent's specifically stated that in St. John's a petition for a separate residual unit was sought, that's how St. John's originated. The union, who was already representing one of the already preexisting units, filed a petition for a separate additional unit, and the employer sought review of that because the employer was now faced with six units of the same type of employee, and out of the residual remaining employees was just six more employees was left. So what the employer sought review of in St. John's was the requirement that there now was going to be a sixth unit. And the board, in the proceedings below, the regional director had ordered the sixth unit to include all the residual remaining skilled maintenance employees. So is that the principle here, that when you're seeking an additional unit, you have to bring all the residual employees, but when you're not seeking an additional unit, you don't? Is that the principle? Yes, that's the distinguishing factor. And how is that consistent with the nonproliferation impetus of the rule and of the statute? Well, I think, well, of course, again, in St. Vincent's you did not have a unit proliferation concern because you just brought the portion of employees into the remaining unit. But while unit proliferation is a concern and was a driving concern behind the health care rule, it's not a mandate and it doesn't have the force of law. And is it unit proliferation that's the only concern? Yes, it's unit. I thought it was more general than unit proliferation. I thought it was election proliferation or something like that. If you spend your time on a rainy Saturday perhaps reading through the rulemaking here, you'd see that unit proliferation was the primary concern. At one point there could have been possibly 20 different kinds of units in a hospital setting, which of course would be incredibly disruptive to patient care. If you look at what the board did in St. Mary's? What is it about the additional units that makes it more disruptive than a proceeding that seeks to add additional employees to an existing unit? Well, you wind up having, according to the legislative history, possibly more opportunities for work stoppages and jurisdictional disputes. Because every time you have an additional unit, you have an additional? Problem. A fracturing of units that actually continues on in time. Once you have multiple units, it's a continuing problem, whereas an election happens once and it's a moment in time and then it ends. Whereas a proliferation of units is a problem that is ongoing that the hospital has to grapple with. St. Vincent and the board here did not create that problem for the hospital. They took a distinct segment of employees and moved them within the existing unit. As I was trying to draw the court's attention to the St. Mary's case, in that case they allowed the creation of, they meaning the board, allowed the creation of a residual unit, and they recognized the unit proliferation problem but also balanced it against collective bargaining history and the stability of the labor relationship. In other words, it seems like a basic point is just that if you have multiple organizations that need to come together, you're less likely to avoid discord than if you have fewer organizations that need to come together. Yes, I think as any member of a large family would tell you that sometimes the smaller the better. And again, the board's decision here did not result in any additional unit. It took a segment of employees and added them to the existing unit. So you're not contesting, I mean you're not disputing the notion that there is disruption if you have this kind of piecemeal addition to units, which is what Rush is saying is happening here, right? There's no type of disruption that doesn't occur in an ordinary election process. The offer of proof that Rush put forward dealt with, well, we had employees who were away from their workstation and we had some families of patients complain, but that's something that would happen in an election. That's Section 7 rights of employees to seek a representative in their workplace. It's part and parcel. And that's something that was considered in enacting the health care rule and in applying the National Labor Relations Act to hospitals. So you're saying that that's not disruption at all, in the sense that the board was defining that term or using that term when it promulgated the health care rule? It was not the concern that the board had in mind in promulgating the health care rule. It was not the type of concern that the board was addressing with unit proliferation. The type of disruption the board was considering with regard to unit proliferation dealt more, again, with the wage whipsawing, the jurisdictional disputes, and the work stoppages. Thank you very much. Thank you for your time. Mr. Kappas. Good morning. Good morning. I'm here representing Teamsters Local 743. I think it's important to keep sight of two basic things about this case. First of all, what we're talking about is whether the NLRB has reasonably interpreted its own rule, the health care rule, here. And what they said in St. Vincent is that when you have this kind of election, a self-determination election, a petition to add employees to a unit, the rule doesn't apply at all because that's viewed as a situation that's covered by the exception for preexisting, non-conforming units. But what about St. John's? What about the relation between St. Vincent and St. John's? So the board said two things about St. John's. They said that in St. John's there's a provision in the rule that says, even though it doesn't apply to preexisting units, subsection C says when you have a petition for additional units, then you have to try and do the best you can to comply with the rule. And the board in St. John's was applying that exception. And what St. Vincent's explained was two things. One is that St. John's began as a petition for additional units, and the expansion of the voting group occurred when the case was still in that status at the regional level. The regional director expanded the voting universe, while it was still a case that was for an additional unit. When it got to the board, there was no quarrel about the scope of the voting group. It was just whether the employer said there should be no election at all, because it just violates the rule to have an election. And what the board said was, no, there should be an election, but it should be an election to add the group that the regional director had configured to the existing group. So that's the point at which the board turned it into an Armour Globe self-determination election, but it didn't revisit the scope of the voting group. Now, if it had, there are very peculiar facts about St. John, and the board in St. Vincent alluded to that and said this is a very extreme situation, because you had the relatively small universe of skilled maintenance workers already broken into five different groups represented by five unions. And one of those unions said, we'd like a subset of the sliver that remains as a sixth group. And the board in St. Vincent said, well, that might have been too much for different reasons. And it further distinguishes the situation from this kind of case. Now, I submit that that is consistent with the board's interpretation of the rule. We cited all kinds of cases where they say additional unit means additional, separate, new unit, and here you're just adding to an existing unit. The other thing is it seems mandated by the words of the rule. And finally, as to the policy of the rule, the policy that animated the rule was the concern about proliferation of bargaining units. And where that comes from is Senator Taft, when the law was amended to allow the expansion into this area, he identified two concerns. One was jurisdictional disputes, and the other were work stoppages. As to proliferation of units, in the American Hospital Association case, the Supreme Court made clear that that concern is not law. That's just a concern. And the board, it's a concern that animated the rule, but in St. Vincent, the board explained why expanding this unit is not contrary to that policy. These people will come into the unit. They'll be covered by the collective bargaining agreement. They'll be part of the ordinary cycle. There won't be jurisdictional disputes proliferated by adding these people to the unit. But it's not necessarily that they just are automatically added into the collective bargaining agreement, right? There's some bargaining that has to happen before. Yes, it's true. But if you look at the collective bargaining agreement in this case, which I would strongly recommend you do, it's in the joint appendix, you'll see that job classifications are not mentioned at all in the collective bargaining agreement, except for wage scales. Generic stuff, you know, all kinds of things that apply equally across this unit. And the regional director, when he was finding that this group fit within the existing group, pointed out that the existing pay scale for the patient care technicians is very similar to the existing pay scale for the certified nursing assistants who are already in the unit. So in point of fact, for this particular group, it would be pretty much seamless to incorporate them. Now, as for the disruption of the election, I'd like to point out a couple of things about that. We're speculating, but I could just as easily speculate that the way the hospital wants to do the election would be more disruptive because they want to vastly expand the number of voters. How does that make sense in terms of avoiding disruption? And the statute provides, or the board's rules provide, I guess it's a statute actually, you can have elections every year. If the union keeps losing, they'll just come back every year. So you're not going to get away from elections. And that's not what was identified as an animating concern in the rule. I mean, is the bottom line that with respect to the two concerns you identified, which are jurisdictional disputes and work stoppages, that proliferation of units presents a different order of concern with disorder on those two axes than does addition of employees to existing units? Yes, it's a totally different concern because, as Ms. Haney pointed out, it keeps existing over time. Every three years you have people on different cycles, and then you have people claiming that's my work they're doing. If one group was out on strike, then the others are hobbled. There's not a hint anywhere that having the election was a problem. Thank you. Thank you very much. We'll give you back a couple minutes. Mr. Schmarks. Thank you, Judge. And I'd actually like to begin with a point that all of you have raised and that counsel addressed. I've heard from both counsel for the board and counsel from the union that the kind of disruptions that Rush has identified are not the concerns of the board's policy and are not the concerns that the prior case has addressed. I find no such finding in the board's decision here. I find no such finding in the board's decision in St. Vincent. If the board wants to make that finding, let it make that finding and issue a decision that this court can review. Counsel's words and counsel's arguments about what the board intended, about how the board considered this case to be decided, are not part of the board's decision. The board has to make and weigh the decisions about these disruptions. If you look at the prior decisions, they ordinarily did this. Prior to 1989, even, the board reached the same result that it reached in St. John's. If you look at the Mary Thompson Hospital case involving the same union, Teamsters Local 743, a 1979 case, the board said there the determinative factor here is the appropriateness of the unit possibly perfected through the addition of the voting unit. To be appropriate, the voting unit must at least include all unrepresented employees of the same type or category included in the existing unit so that their addition would complete or correct the existing unit and bring it into conformity with some unit that the board would find appropriate. The board reached the same result even prior to 1989 because it had the same concerns here. We've heard that the only concern is proliferation of units and that that's the principal concern. As you point out, Judge Wilkins, there is concern about data strikes and disruptions. The board also mentions in its decisions and in its rulemaking wage whipsawing, which certainly is going to occur when you have repetitive elections. So we do have other kinds of concerns. And even in the 1989 rulemaking, the board indicated that the problems perceived to arise from proliferation were what the rules were intended to address. Finally, we have the issue of, you know, the existing CBA. Counsel for the union has argued that somehow the existing CBA should be looked at to see how similar these employees are. Quite honestly, if we're going to make decisions in this case based on our suppositions about how similar or dissimilar employees are to existing unit employees, it's going to make these cases virtually impossible to decide. Ultimately, the court has to make a policy decision. And frankly, it needs to hold the board accountable to make a policy decision. They made no such policy decision here. And for that reason, the decision should be vacated. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Wilkins